# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

LETICIA B.,

      Plaintiff,

v.                                                                          Civ. No. 24-116 MV/GJF

MICHELLE KING, *Acting Commissioner*
*of the Social Security Administration*,[1]

      Defendant.

## PROPOSED FINDINGS AND RECOMMENDED
## DISPOSITION ON PLAINTIFF'S MOTION TO REMAND

      THIS MATTER is before the Court on Plaintiff's Motion to Reverse and Remand [ECF 15]

("Motion"), dated July 3, 2024, challenging the determination of the Commissioner of the Social

Security Administration ("the Commissioner") that Plaintiff is not entitled to disability insurance

benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-34. The Motion is fully briefed.

*See* ECFs 17; 20. The Court has thoroughly reviewed the administrative record, the parties' briefs,

and the relevant law, and for the reasons set forth below, recommends that Plaintiff's Motion be

**DENIED** and the case dismissed with prejudice.[2]

## I.    BACKGROUND

      Plaintiff is 45 years old with a high school education and previous work as an administrative

clerk, sales attendant, cashier, and teller/banker. Administrative Record ("AR") at 21, 221–22,

234. On February 18, 2021, she filed an initial application for disability insurance benefits. AR at

87–96. In that application, Plaintiff alleged that she became disabled on August 17, 2017, due to

---

[1] Michelle King became Acting Commissioner of the Social Security Administration on January 20, 2025; thus, pursuant to Federal Rule of Civil Procedure 25(d), she is "automatically substituted as a party."

[2] The Court files this Proposed Findings and Recommended Disposition ("PFRD") pursuant to the presiding judge's February 9, 2024 Order of Reference. ECF 7.

"[s]evere PTSD, major depression, fibromyalgia, sleep apnea, anxiety, insomnia, nightmares, REM sleep disorder, migraines, [and] asthma." AR at 88. Plaintiff's application was denied at the initial level on October 21, 2021 [AR at 87–96], and upon reconsideration on September 2, 2022 [AR at 98–116]. She requested a hearing [AR at 139–41], which ALJ Jennifer Fellabaum conducted by telephone on January 26, 2023 [*see* AR at 58–86]. Plaintiff was represented by counsel and testified at the hearing, as did vocational expert Mary Elvir ("VE"). AR at 56–86.

On February 7, 2023, the ALJ issued her decision, finding that Plaintiff was not disabled under the relevant sections of the Social Security Act. AR at 11–23. Plaintiff requested that the Appeals Council review the ALJ's decision [AR at 46–53], but the Council denied her request for review [AR at 1–7], which made the ALJ's decision the final decision of the Commissioner. *See Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). Plaintiff then timely filed the Complaint in this case seeking review of the Commissioner's decision. ECF 1.

## II.  STANDARD OF REVIEW

### A.  Sequential Evaluation Process

To qualify for disability benefits, a claimant must establish the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To evaluate claims for benefits, the SSA uses a five-step sequential evaluation process. *Barnhart v. Thomas*, 540 U.S. 20, 24–25 (2003) (citation omitted). The first four steps require the claimant to show that (1) "[s]he is not presently engaged in substantial gainful activity," (2) "[s]he has a medically severe impairment or combination of impairments," and either (3) the impairment is equivalent to a listed impairment or (4) "the impairment or combination of impairments prevents [her] from performing [her] past

work." *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The claimant bears the burden of proof at steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 & n.5 (1987); *Grogan*, 399 F.3d at 1261; *Williams*, 844 F.2d at 755–51, 751 n.2. If the claimant reaches step five, however, the burden shifts to the Commissioner to show that the claimant retains sufficient capacity "to perform other work in the national economy in view of [her] age, education, and work experience." *Yuckert*, 482 U.S. at 142, 146 n.5.

### B.  Substantial Evidence

Judicial review of the ALJ's five-step analysis and ultimate decision is both legal and factual. *See, e.g.*, *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) ("The standard of review in a social security appeal is whether the correct legal standards were applied and whether the decision is supported by substantial evidence."). If the ALJ applied the correct legal standards and supported her findings with substantial evidence, the Commissioner's decision stands. *See Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004).

In determining whether the ALJ applied the correct legal standards, the Court evaluates whether the ALJ "followed the specific rules of law" required for "weighing particular types of evidence in disability cases." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). The Court may reverse or remand if the ALJ failed to "apply correct legal standards" or "show . . . [she] has done so." *Hamlin*, 365 F.3d at 1214 (citations and quotations omitted).

The Commissioner's factual findings, on the other hand, are presumed conclusive unless "[un]supported by substantial evidence." 42 U.S.C. § 405(g). This standard requires "look[ing] to an existing administrative record and ask[ing] whether it contains 'sufficien[t] evidence' to support

the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (alteration in original) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "[T]he threshold for such evidentiary sufficiency is not high. Substantial evidence, [the Supreme] Court has said, is more than a mere scintilla." *Id.* (quotation and citation omitted). "It means—and means only— such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted).

Under this "substantial evidence" standard, a court cannot convert its meticulous review of the full record into "reweigh[ing of] the evidence nor substitut[ing] [the court's] judgment for that of the agency." *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013) (quotation omitted); *Hamlin*, 365 F.3d at 1214. Indeed, a court is to "review only the sufficiency of the evidence, not its weight." *Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007) (emphasis in original). Thus, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Lax*, 489 F.3d at 1084 (quotation omitted). Consequently, a court "may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Id.* (quotation and brackets omitted).

## III.  PLAINTIFF'S CONTENTIONS

Plaintiff contends that remand is required for two primary reasons: (1) because the ALJ "committed harmful legal error" by misapplying Social Security Ruling ("SSR") 12-2p when she determined that Plaintiff's "well-documented fibromyalgia" was not medically determinable [ECF 15 at 6–10]; and (2) because the ALJ committed "reversible legal error" by failing to properly assess the opinions of Plaintiff's long-time treating physician, Dr. David Stromberg [*id*. at 10–15]. With respect to the latter, Plaintiff argues that the ALJ erred by failing to consider Dr. Stromberg's

opinion that she would benefit from having her dogs certified to provide emotional support and by

inadequately assessing his opinion that she was "unable to reliably work." *Id*. at 11–15.

## IV. ALJ'S DECISION AND FINDINGS

### A. Steps One Through Three

At step one of the sequential evaluation process, the ALJ found that Plaintiff "did not

engage in substantial gainful activity during the period from her alleged onset date of August 17,

2021 through her date last insured of December 31, 2021." AR at 13. At step two, the ALJ found

that Plaintiff had the following severe impairments: "left hip trochanteric bursitis, degenerative

disc disease, plantar fasciitis, depression, anxiety, and PTSD." AR at 13. As to Plaintiff's alleged

fibromyalgia, the ALJ found the impairment non-medically determinable:

> The claimant's alleged fibromyalgia is unsupported by "appropriate medical
> evidence" (SSR 12-2p). Despite it being mentioned 138 times in the medical
> evidence, no physical examinations of record have revealed the requisite tender
> points and other supportive clinical findings, as enumerated in SSR 12-2p.
> Moreover, in December 2020, even [Plaintiff's] primary care provider[,] Dr.
> Stromberg, noted [fibromyalgia] was only a "likely" diagnosis and that he would
> "revisit" it because the diagnosis was made a long time ago by another physician
> (Exhibit 1F, 75, 78). [Dr. Stromberg] never observed [Plaintiff] with tender points.
> By 2022, he also was not even diagnosing [fibromyalgia] anymore during visits (Ex.
> 7F, 58). Further, the record does not reflect testing that excludes "other disorders,"
> which is required to establish fibromyalgia (SSR 12-2p). Dr. Stromberg advised
> [Plaintiff] that he could order labs to rule out rheumatologic causes, but it does not
> appear that ever occurred (Exhibit 1F, 89). A basic lab panel was r[u]n later
> reflecting a slightly elevated CRP with a normal Sed Rate (Exhibit 1F, 278).
> Prescribing medications for this condition without any supporting clinical signs
> cannot establish this diagnosis pursuant to Agency policy (Exhibit 1F, 21).
> Accordingly, for these reasons, I find fibromyalgia is non-medically determinable.

AR at 14. The ALJ concluded at step three that none of these impairments, individually or

collectively, matched the severity of the "listed impairments." AR at 15–17.

### B. Steps Four and Five

At step four, the ALJ found that Plaintiff's statements concerning the severity of her

symptoms "[were] not entirely consistent with . . . the . . . evidence." AR at 18. The ALJ also

discussed, among other things, an opinion of Plaintiff's primary care provider, Dr. Stromberg. *See*

AR at 20. The ALJ found Dr. Stromberg's opinion "unpersuasive," providing this summary:

> [Dr. Stromberg] opined [that Plaintiff] was "unable to reliably work" . . . (Exhibit
> 9F, 1; 10F, 2). His opinion is unsupported because he merely cited various
> diagnoses to support his opinion without any objective clinical findings. In
> addition, his opinion is inconsistent with his own treatment notes, which reflect
> [Plaintiff] was the primary caregiver for her grandchildren in 2022 (Exhibit 10F,
> 3). He also provided a work excuse in November 2022 and released [Plaintiff] with
> "no restrictions" (Exhibit 10F, 3)[.] Moreover, he routinely observed that [Plaintiff]
> was calm and cooperative with no acute distress and identified only some left
> trochanteric bursa or lumbar paraspinal tenderness (Exhibit 7F, 67, 76). For these
> reasons, his opinion is unpersuasive.

AR at 20.

Also at step four, the ALJ determined that Plaintiff had the residual functional capacity

("RFC") to perform a range of light work with the following limitations:

> [S]he could occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl;
> never climb ladders, ropes, or scaffolds; never tolerate exposure to unprotected
> height[s] or hazardous machinery; no concentrated exposure to extreme cold or
> environmental or pulmonary irritants; never operating a motor vehicle for
> commercial purposes; tolerating a moderate noise level; occasionally operating
> bilateral foot controls; never performing fast-paced assembly line work; and
> occasionally interact[ing] with the general public.

AR at 17.

In light of her RFC findings, the ALJ determined that Plaintiff was unable to perform her

past relevant work. AR at 21. Nevertheless, at step five, she found that there were "jobs that existed

in significant numbers in the national economy that [Plaintiff] could have performed," such as

router, marker, and housekeeping cleaner. AR at 21–22. Consequently, the ALJ found Plaintiff not

disabled within the meaning of the Social Security Act. AR at 22.

## V.  DISCUSSION

### A.  The ALJ did not commit reversible error at step two when she determined that Plaintiff's alleged fibromyalgia was not a medically determinable impairment.

Plaintiff asserts that underlying the ALJ's step-two determination that fibromyalgia was not a medically determinable impairment are "several findings unsupported by substantial evidence and that contain legal error." ECF 15 at 7. For her part, the Commissioner insists that the ALJ properly considered Plaintiff's alleged fibromyalgia impairment in accordance with the applicable social security ruling and reasonably found that it was not a medically determinable impairment. ECF 17 at 13.

Fibromyalgia is a chronic rheumatic condition that in some individuals causes "long-term but variable levels of muscle and joint pain, stiffness and fatigue." *Brosnahan v. Barnhart*, 336 F.3d 671, 672 n.1 (8th Cir. 2003). To demonstrate that she has a medically determinable impairment of fibromyalgia, a claimant must provide evidence from an acceptable medical source[3] of a diagnosis of fibromyalgia. SSR 12-2p, 2012 WL 3104869, at *2 (July 25, 2012). But a physician's diagnosis is not enough. *See id*. To qualify as a medically determinable impairment, a physician must diagnose fibromyalgia using one of two listed sets of criteria: the 1990 ACR Criteria for the Classification of Fibromyalgia or the 2010 ACR Preliminary Diagnostic Criteria. *Id*. at *2-3. Further, the medical evidence must establish that the claimant meets the criteria. *Id*.

Under the 1990 ACR Criteria, or those found in "Section II.A" of SSR 12-2p, the SSA may find a medically determinable impairment of fibromyalgia only if the claimant has:  (1) "[a] history of widespread pain—that is, pain in all quadrants of the body (the right and left sides of the body, both above and below the waist) and axial skeletal pain (the cervical spine, anterior chest, thoracic

---

[3] Only a licensed physician (a medical or osteopathic doctor) may provide evidence of a medically determinable impairment of fibromyalgia. SSR 12-2p, 2012 WL 3104869, at *2 (July 25, 2012).

spine, or low back)—that has persisted (or that persisted) for at least 3 months"; (2) "[a]t least [eleven] positive tender points on physical examination"; and (3) "[e]vidence that other disorders that could cause the symptoms or signs were excluded." *Id*. Under the 2010 ACR Criteria, or those found in "Section II.B," instead of relying on tender points to demonstrate the second requirement, a claimant may show that she has "[r]epeated manifestations of six or more [fibromyalgia] symptoms . . . , especially manifestations of fatigue, cognitive or memory problems ('fibro fog'), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome." *Id*. (footnotes omitted). As with the Section II.A criteria, the claimant must show a history of widespread pain and the exclusion of other disorders that could cause the symptoms or signs of fibromyalgia. *Id*. Although they came later, the Section II.B criteria do not supersede the Section II.A criteria. *See id*. Instead, either avenue is available to establish a medically determinable impairment of fibromyalgia. *Id*. at *2 (noting the ruling "provide[s] two sets of criteria for diagnosing [fibromyalgia]," either of which is sufficient to establish the impairment).

At step two of the sequential evaluation process, the ALJ recognized that SSR 12-2p describes the evidence required to establish a medically determinable impairment of fibromyalgia, but she determined that fibromyalgia was not among Plaintiff's medically determinable impairments.[4] AR at 14. Analyzing Plaintiff's alleged impairment of fibromyalgia in accordance with SSR 12-2p, the ALJ did not explicitly discuss the separate sets of criteria used to establish fibromyalgia as a medically determinable impairment. AR at 14. Rather, she concluded that "[d]espite [fibromyalgia] being mentioned 138 times in the medical evidence, no physical examinations of record have revealed the requisite tender points and other supportive clinical

---

[4] Because the ALJ determined that Plaintiff's "left hip trochanteric bursitis, degenerative disc disease, plantar fasciitis, depression, anxiety, and PTSD" were severe medically determinable impairments, she proceeded beyond step two of the sequential evaluation process. *See* AR at 13–22.

findings, as enumerated in SSR 12-2p." AR at 14. She also emphasized that "the record does not reflect testing that excludes 'other disorders,' which is required to establish fibromyalgia (SSR 12-2p)." AR at 14. In sum, the ALJ identified two unsatisfied SSR 12-2p requirements: (1) the presence of at least eleven positive tender points; and (2) evidence that other disorders that could cause the symptoms or signs were excluded.

To the extent Plaintiff must demonstrate tender points to satisfy the Section II.A criteria, she insists that tenderness *is* documented throughout the record, to include in the proximal area of fascia lata [AR at 373], in the SI region [AR at 413], in the hip and lateral thigh [AR at 415], in the bilateral paraspinous muscles [AR at 420], in the left bicipital tendon [AR at 446], in the left lateral thigh and left lateral hip [AR at 853], in the convergence of the origin of the quadricep and the left hip abductor along the iliac crest [AR at 856], in the mid tensor fascia lata of the left hip [AR at 856], in the anterior lateral calf [AR at 879], along the left trochanteric bursa [AR at 940], and over the insertion point of the plantar fascia on the right and left [AR at 979]. ECF 15 at 8. The Commissioner responds that "the mere fact that Plaintiff has tenderness in some areas is not sufficient" to establish a medically determinable impairment of fibromyalgia. ECF 17 at 15. The Court agrees.

SSR 12-2p specifies precisely where the requisite eleven tender points must be located, including at the base of the skull, low cervical spine, second rib, lateral elbow, and inner aspect of the knee. SSR 12-2p, 2012 WL 3104869, at *3. Further, SSR 12-2p provides that for each tender point a physician must "perform a digital palpation with an approximate force of [nine] pounds." *Id*. Because Plaintiff points to no evidence to suggest that Dr. Stromberg examined her for the requisite eleven tender points in this manner, she fails to demonstrate that the ALJ erred in her analysis of the Section II.A criteria.

As to the Section II.B criteria, Plaintiff emphasizes that there are no "requisite tender points."[5] ECF 15 at 7. To be sure, Section II.B's second criteria is distinct from Section II.A in that it requires "[r]epeated manifestations of six or more [fibromyalgia] symptoms" rather than eleven tender points. SSR 12-2p, 2012 WL 3104869, at *2–3. Although the ALJ does not use the precise language of Section II.B, the Court does not read her step-two analysis to require the demonstration of tender points in order to satisfy the Section II.B criteria. *See* AR at 14 ("no physical examinations have revealed the requisite tender points *and other supportive clinical findings*, as enumerated in SSR 12-2p" (emphasis added)). In any event, Plaintiff was required, under *both* Section II.A and Section II.B, to show the exclusion of other disorders that could cause the symptoms and signs of fibromyalgia, s*ee* SSR 12-2p, 2012 WL 3104869, at *2-3, and the ALJ made clear that she found no such evidence in the record, *see* AR at 14.

In terms of excluding other causes for her symptoms, Plaintiff points to a January 26, 2017 medical record that indicates a negative serology for lupus. ECF 15 at 9 (citing AR at 445–46). According to that record, Plaintiff "requested testing" for lupus, *even though she was not exhibiting symptoms*, because she had multiple family members with the condition. AR at 445. The Commissioner observes that "Dr. Stromberg did not provide this evidence, as required by SSR 12-2p." ECF 17 at 17. Indeed, the January 26, 2017 "Outpatient Notes" from SE Heights Clinic were signed by physicians other than Dr. Stromberg. *See* AR at 447. More to the point, the record does not indicate that the purpose of the testing was to exclude a condition that might be responsible for

---

[5] Plaintiff, at most, argues that "there were 'clinical signs'" of fibromyalgia. ECF 15 at 9.  But this conclusory argument, without citations to the record, hardly satisfies Plaintiff's burden to show, in accordance with the Section II.B criteria, "[r]epeated manifestations of six or more [fibromyalgia] symptoms . . . , especially manifestations of fatigue, cognitive or memory problems ('fibro fog'), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome." *See* SSR 12-2p, 2012 WL 3104869, at *2. The Commissioner emphasizes that Plaintiff has not presented evidence that Dr. Stromberg assessed cognitive or memory problems or irritable bowel syndrome.  ECF 17 at 16. As discussed below, Plaintiff does not satisfy the Section II.B criteria because she fails to show that Dr. Stromberg conducted testing to exclude "other disorders."

Plaintiff's fibromyalgia-related symptoms. Instead, the record indicates that the testing was performed on account of Plaintiff's family history and in the absence of any symptoms. *See* AR at 447. Plaintiff does not point to any other records to suggest that Dr. Stromberg performed testing to rule out other causes for her fibromyalgia-related symptoms. Although he tested her "CRP"[6] and "Sed Rate"[7] in December 2020 for purposes of "solidify[ing]" her fibromyalgia diagnosis, Plaintiff does not dispute that those results indicated, as the ALJ reported, only a "slightly elevated CRP with a normal Sed Rate." *See* AR at 14; *see also* AR at 387 (Dec. 23, 2020 Outpatient Notes reporting that Dr. Stromberg ordered "CBC," "CRP," and "Sed," to "solidify" fibromyalgia diagnosis), 587 (Dec. 23, 2020 Hematology Report indicating a within range Sed Rate and elevated CRP). Absent evidence that Dr. Stromberg performed testing to *exclude* other conditions, Plaintiff fails to demonstrate that the ALJ erred when she determined that fibromyalgia was a medically determinable impairment under SSR 12-2p. *See* SSR 12-2p, 2012 WL 3104869, at *3.

The ALJ offered further justification for her step-two finding that fibromyalgia was not a medically determinable impairment:  she observed that in December 2020, Dr. Stromberg noted that fibromyalgia "was only a 'likely' diagnosis . . . that he would 'revisit' . . . because [it] was made a long time ago by another physician." AR at 14 (citing AR at 387, 390). The ALJ added that by 2022, Dr. Stromberg "was not even diagnosing [fibromyalgia] during visits." AR at 14 (citing AR at 935[8]). Plaintiff insists that Dr. Stromberg "*did* 'revisit' this diagnosis later in the

---

[6] C-reactive protein ("CRP") is produced by the liver and rises when there is inflammation in a person's body. *What is a C-Reactive Protein Test?*, WebMD, https://webmd.com/a-to-z-guides/c-reactive-protein-test [https://perma.cc/QE64-YZBX].

[7] "The sedimentation rate—or 'sed rate,' for short—is a blood test that checks for inflammation." *What is Your Sedimentation Rate?*, WebMD, https://www.webmd.com/a-to-z-guides/your-sedimentation-rate [https://perma.cc/4TEL-SLQR].

[8] The record to which the ALJ cites is a June 15, 2022 treatment record from Jenna Hansche. *See* AR at 935. It appears this citation may be a clerical error, as there are other 2022 records signed by Dr. Stromberg in which he was no longer diagnosing fibromyalgia. *See, e.g.*, AR at 930.

record" contrary to the ALJ's implication that Dr. Stromberg never did so. ECF 15 at 8 (emphasis added) (citing AR at 1069 (Dec. 7, 2020 Outpatient Notes indicating "revisited fibromyalgia today" and "meets AAPT criteria")). The medical record to which Plaintiff refers suggests that on December 7, 2022, Dr. Stromberg "revisited fibromyalgia" and determined that Plaintiff met the "AAPT criteria" for that condition with nine out of nine sites of pain and other symptoms. AR at 1069.

As the Commissioner points out, this December 7, 2022 record came well after Plaintiff's December 31, 2021 date last insured and therefore outside of the relevant period. ECF 17 at 16. More importantly, the record is not inconsistent with the ALJ's step-two findings. The ALJ noted that Dr. Stromberg considered fibromyalgia only a "'likely' diagnosis," indicating his intention to "revisit" it, but the ALJ did *not* say that Dr. Stromberg never revisited the diagnosis. *See* AR at 14 (citing AR at 387, 390). Although Dr. Stromberg authored a December 7, 2022 letter stating that Plaintiff had "a confirmed diagnosis of Fibromyalgia," he relied on diagnostic criteria other than those specified in SSR 12-2p in making that diagnosis. *See* AR 1041, 1049, 1069. Thus, this post-relevant-period letter does not undermine the ALJ's finding that "no physical examinations of record have revealed the requisite tender points and other supportive clinic findings, *as enumerated in SSR 12-2p.*" *See* AR at 14 (emphasis added). Plaintiff appears to concede as much in her reply brief. ECF 20 at 2 ("After reading the Commissioner's Response, the Commissioner may well be correct that the evidence as it stood at the time of the decision did not clearly establish [Plaintiff] met all the criteria of SSR 12-2p . . ."). In any event, because Plaintiff does not point to record evidence that satisfies the SSR 12-2p criteria, whether under either Section II.A or Section II.B, the Court cannot say that the ALJ's step-two finding was legally erroneous or unsupported by substantial evidence.

In her reply brief, Plaintiff attempts to shift the focus of the Court's step-two inquiry, suggesting that even if she failed to satisfy the SSR 12-2p criteria, a lack of sufficient evidence as to those criteria "should have triggered the ALJ's duty to inquire further."[9] ECF 20 at 2. In support, she relies upon *Gonzalez v. Berryhill*, No. 1:17-cv-01096-LF, 2019 WL 1331787 (D.N.M. Mar. 25, 2019). *See* ECF 15 at 9; ECF 20 at 2.

In *Gonzalez*, like here, the ALJ determined that the plaintiff's alleged fibromyalgia could not be established as a medically determinable impairment "because the file contain[ed] no evidence showing [it] was diagnosed in accordance with" the SSR 12-2p criteria. *Gonzalez*, 2019 WL 1331787 at *2. According to Judge Fashing, the record before the ALJ did not establish that a physician had diagnosed the plaintiff with fibromyalgia, but there was "overwhelming evidence that [she] suffer[ed] from the signs and symptoms" of the condition, including dizziness, fatigue, body aches and widespread pain, numbness, itching, and headaches. *Id.* at *5. Based on references to these symptoms in the record, Judge Fashing concluded that "it would have been reasonable for the ALJ to inquire whether [the plaintiff] had been diagnosed with fibromyalgia, when that diagnosis was made, and by whom." *Id.* Because the ALJ failed to "make this simple inquiry," Judge Fashing granted the plaintiff's motion to remand, finding that the ALJ "failed in his duty to develop the record as to the material issue of whether [the plaintiff] had a physician's diagnosis of fibromyalgia." *Id.*

When faced with similar arguments concerning the development of fibromyalgia diagnoses and evidence, other judges in this District have reached a different conclusion. *See, e.g.*, *Evans-Guillen v. Berryhill*, Civ. No. 16-327 GJF, 2017 WL 1491894, at *10 (D.N.M. Apr. 12, 2017)

---

[9] Plaintiff also made a failure-to-develop argument in her opening brief, suggesting that "if the ALJ found insufficient evidence of fibromyalgia, she should have recontacted [Plaintiff's] medical sources, request[ed] additional records, or order[ed] a consultative examination," though she devoted the bulk of her argument to the position that the ALJ misapplied SSR 12-2p. *See* ECF 15 at 9 (citations omitted).

(concluding that "sufficient evidence exist[ed] in the record" for the ALJ "to make a disability determination" such that the ALJ did not commit harmful error in deciding not to further develop the record with respect to whether the plaintiff's fibromyalgia satisfied the SSR 12-2p criteria); *Lucero v. Saul*, No. No. 19-1016 GBW, 2021 WL 631920, at *6 (D.N.M. Feb. 18, 2021) (concluding that the ALJ's failure to discuss fibromyalgia in accordance with SSR 12-2p was "no more than harmless error," where the plaintiff did not argue that any of her symptoms of fibromyalgia were omitted from the RFC determination); *Saiz v. Kijakazi*, No. 21-0681 KRS, 2022 WL 4235325, at *17 (D.N.M 2022) (concluding that the plaintiff did not demonstrate harmful error, where "[t]he ALJ determined that she had enough information to make a disability determination without a consultative examination, and [the p]laintiff ha[d] not pointed to objective evidence in the record that would suggest a medically-determinable impairment of fibromyalgia . . . would have a material impact on the disability decision").

Here, the record provides slightly more detail regarding Plaintiff's fibromyalgia diagnosis than did the record in *Gonzalez*. Dr. Stromberg observed in December 2020 that Plaintiff was initially diagnosed with fibromyalgia "quite some time ago" by Dr. Kimberly Ceci, but Dr. Stromberg explained that he would "revisit" that earlier diagnosis. AR at 390. Two years later, on December 7, 2022, Dr. Stromberg wrote a letter stating that Plaintiff was under his care and had "a confirmed diagnosis of Fibromyalgia." AR 1041, 1049. Records from that same day indicate that Dr. Stromberg determined that Plaintiff met the "AAPT criteria" for a fibromyalgia diagnosis. AR at 1069. Plaintiff submits that because her "treating doctor found that she met other [non-SSR 12-2p] criteria for evaluating fibromyalgia, it triggered a duty by the ALJ to inquire further." ECF 20 at 2.

In general, the ALJ has a duty to ensure that the record contains a complete medical history

and to obtain a consultative examination, if necessary. *See* 42 U.S.C. § 423(d)(5)(B); 20 C.F.R. § 404.1512(b). In addition, SSR 12-2p provides that when there is insufficient evidence for the Commissioner to determine whether an individual has a medically determinable impairment of fibromyalgia or is disabled, the Social Security Agency may take steps to develop the record, including purchasing a consultative examination. SSR 12-2p, 2012 WL 3104869, at *4. Yet, "the ALJ 'has broad latitude' in determining whether" to develop the record, *see Jazvin v. Colvin*, 659 F. App'x 487, 489 (10th Cir. 2016) (quotation omitted)), and there is no need to do so when the ALJ can make a disability determination based on the evidence already in the record, *see* 20 C.F.R. § 404.1520b(b)(2).

Here, the ALJ exercised her discretion to render a disability determination without further record development, and neither Plaintiff nor the attorney who represented her at the administrative stage suggested that further development was necessary with respect to her fibromyalgia-related symptoms. *See* AR at 63 (Plaintiff's attorney indicating that the record was complete). In counseled cases, the Tenth Circuit has held that an ALJ should "ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored, and the ALJ may ordinarily require counsel to identify the issue or issues requiring further development." *Branum v. Barnhart*, 385 F.3d 1268, 1271 (10th Cir. 2004). Under the circumstances of this case, the Commissioner insists that the ALJ reasonably found that she had sufficient information, both to evaluate whether Plaintiff had established fibromyalgia as a medically determinable impairment under the requisite criteria and ultimately to make a determination on her claim. ECF 17 at 17–18. At least with respect to the sufficiency of information for a disability determination, the Court agrees.

Notably, it is not a physician's fibromyalgia diagnosis but the resulting functional

limitations that determine disability. *See Coleman v. Chater*, 58 F.3d 577, 579 (10th Cir. 1995). And here, after determining that Plaintiff's alleged fibromyalgia did not satisfy the SSR 12-2p criteria for a medically determinable impairment, the ALJ went on to consider and thoroughly discuss evidence related to Plaintiff's various symptoms, many of which she attributed to fibromyalgia. *Compare* AR at 68 (testifying that the disabling symptoms from her fibromyalgia included constant achy pain and tingling, most notably in her hips and back, as well as flares approximately once per month with sharp, excruciating pain), *with* AR 18–20 (discussing Plaintiff's complaints of achy and sharp pain and tingling as well as physical examination findings of tenderness in her hip and spine). To be sure, the ALJ considered functional limitations caused by Plaintiff's hip and spine pain. *See* AR at 13-14 (characterizing Plaintiff's left hip trochanteric bursitis and degenerative disc disease as "severe impairments"); 19–21 (restricting Plaintiff to "light exertion" rather than the "medium exertion" limitation opined by the state agency consultants in part because she found those opinions "inconsistent with the treatment notes documenting fatigue, . . . tenderness in the spine and hip, and injections for pain"). And of the conditions SSR 12-2p describes as "co-occurring," the ALJ analyzed Plaintiff's anxiety and depression as "severe impairments."[10] *Compare* SSR 12-2p, 2012 WL 3104869, at *3 (II.B(2)), *with* AR at 13. In "comparing the objective medical evidence to [Plaintiff's] subjective complaints" the ALJ found Plaintiff "more capable than alleged[,]" explaining:

> In short, clinical examinations routinely reflect largely normal motor, neurological, and psychiatric findings, except for tenderness in the hip and spine and depressed/dysphoric moods, as cited above. Moreover, she reported significant improvement with injections . . . [and] was discharged from counseling in 2020 after achieving treatment goals, as cited above.

AR at 20.

---

[10] Although the ALJ characterized Plaintiff's sleep issues and headaches as non-severe, she also took those impairments into account in formulating Plaintiff's RFC. *See* AR at 14, 17, 20.

For her part, Plaintiff does not point to symptoms of her alleged fibromyalgia that the ALJ failed to consider at step four. Correspondingly, there is no indication that further developing the record with respect to the SSR 12-2p criteria—either by recontacting Dr. Stromberg or by ordering a consultative examination— would have altered the ALJ's decision that Plaintiff was not disabled before her date last insured. *See Jazvin*, 659 F. App'x at 489 ("[T]here is no need for a consultative examination when the ALJ has enough information to make a disability determination.") (citation omitted). Because Plaintiff has not demonstrated harmful error with respect to the ALJ's step-two fibromyalgia analysis, the Court recommends that her Motion be denied as to this ground.

### B. The ALJ did not commit harmful error at step four when assessing Dr. Stromberg's opinion(s).

Next, Plaintiff argues that the ALJ failed to properly assess the opinion of her long-time treating physician, Dr. Stromberg. ECF 15 at 10–15; ECF 20 at 2–8. The Commissioner, on the other hand, maintains that the ALJ's assessment of Dr. Stromberg's opinions complied with agency articulation standards and were supported by substantial evidence. ECF 17 at 18–17.

Because Plaintiff submitted her application for disability insurance benefits after March 27, 2017, the revised regulations for evaluating medical evidence apply. *See* AR at 17, 214; 20 C.F.R. § 404.1520c. In discussing the revised rules for how an ALJ must "consider and articulate medical opinions," the Tenth Circuit has explained:

> Under [these] revised rules, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight," to any medical opinion. The ALJ will instead evaluate the persuasiveness of medical opinions using five factors—supportability, consistency, relationship with the claimant, specialization, and other factors such as "a medical source's familiarity with the other evidence in a claim." Supportability and consistency are the most important factors, and the ALJ must explain how he or she considered them.

*Allred v. Comm'r*, *SSA*, No. 22-4044, 2023 WL 3035196, at *2 (10th Cir. 2023) (quoting 20 C.F.R. § 404.1520c(a)–(c)). In other words, the ALJ must "articulate in [her] determination or decision

how persuasive [she] find[s] all of the medical opinions," particularly by "explain[ing] how [she] considered the supportability and consistency factors." 20 C.F.R. § 404.1520c(b). The ALJ's decision need only be sufficient to "allow a subsequent reviewer . . . to trace the path of [the ALJ's] reasoning." *Nielsen v. Comm'r, SSA*, No. 21-4136, 2022 WL 15570650, at *5 (10th Cir. Oct. 28, 2022).

Plaintiff challenges the ALJ's consideration and her articulation of the persuasiveness of two letters authored by Dr. Stromberg:  a January 17, 2019 letter in which he indicated that Plaintiff "would highly benefit from having her dogs certified to provide her with ongoing emotional support" [AR at 334] and a December 7, 2022 letter in which he opined that "due to her medical conditions, [Plaintiff] is unable to reliably work" [AR at 1041].

### i.    Emotional Support Animal Letter

Plaintiff observes that the ALJ does not mention Dr. Stromberg's emotional support animal letter anywhere in her decision. ECF 15 at 11 (citing AR 8–27). By omitting any discussion of the letter, Plaintiff insists that the ALJ "failed to assess a medical opinion, failed to address material evidence, and failed to include the vocationally relevant need for an emotional support animal in the RFC." *Id.* at 12. Plaintiff emphasizes that an ALJ has a duty to articulate the persuasive value of medical opinion evidence and to "discuss the . . . significantly probative evidence" she rejects. *Id.* at 11–12 (citing 20 C.F.R. § 404.1520c(b)); *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996)). But in the Commissioner's view, Dr. Stromberg's emotional support animal letter constitutes neither a "medical opinion" nor "significantly probative evidence." ECF 17 at 20–21 & n. 4.

First, observing that a "medical opinion addresses 'impairment-related limitations and restrictions' in a claimant's ability to perform (as relevant here) mental demands of work activity,"

the Commissioner insists that the emotional support animal letter does not qualify as a medical opinion. *Id*. at 20 (citing 20 C.F.R. § 404.1513(a)(2)). The Court agrees. Put simply, Dr. Stromberg did *not* opine that Plaintiff required an emotional support animal in order to perform any work-related functions, nor did he discuss what Plaintiff could do in a work setting despite her symptoms and diagnoses. *See Angela H. v. Comm'r, SSA*, No. 2:22-cv-4461, 2024 WL 1259875, at *4 (S.D. Ohio Jan. 30, 2024) (holding that a letter recommending that the plaintiff obtain an emotional support animal to help alleviate issues with social interaction, stress, and anxiety and to enjoy the use of her dwelling was not a medical opinion because it did not describe the work functions she could perform despite her symptoms). Dr. Stromberg's vague suggestion that Plaintiff "may benefit" from her dogs being certified to provide emotional support is not a medical opinion as defined by the applicable regulation and therefore not a statement the persuasiveness of which the ALJ had a duty to assess and articulate.

As to Plaintiff's position that the letter constitutes "significantly probative evidence," the Court is likewise unpersuaded. Plaintiff herself acknowledges that significantly probative evidence relates to a claimant's limitations and ability to work. *See* ECF 15 at 12 (citing *Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007)). On its face, Dr. Stromberg's letter addresses neither Plaintiff's limitations nor her ability to work. Instead, Dr. Stromberg merely suggests that certifying her dogs to provide emotional support could provide Plaintiff "ongoing emotional support" and improve her "wellness," and he makes this suggestion without providing any context as to the setting in which he expected those benefits to accrue. AR at 334.

Plaintiff contends that the ALJ failed to include in the RFC "the vocationally relevant need for an emotional support animal" [ECF 15 at 12], but she fails to demonstrate that she *had* such a vocationally relevant need. After all, an opinion that it might benefit her wellbeing if her dogs

were certified to provide emotional support services is not an opinion that an emotional support animal was medically necessary for Plaintiff to perform a given work function. *See Ashley D. v. Comm'r, SSA*, No. CV 22-11344, 2023 WL 5266849, at *10 (E.D. Mich. July 17, 2023) (concluding that the medical need for an emotional support animal could not be established by a vague recommendation from a physician that the plaintiff would benefit from such a dog). Because Dr. Stromberg's letter does not offer any insight into the impact that an emotional support animal might have on Plaintiff's ability to work, it does not constitute "significantly probative evidence" for which the ALJ needed to account in Plaintiff's RFC. The Court finds no reversible error in the ALJ's omission of any discussion of the emotional support animal letter, and therefore recommends that Plaintiff's Motion be denied on this ground.

### ii.   Unable to Reliably Work Letter

In her final ground for relief, Plaintiff contends that the ALJ committed reversible error by inadequately articulating the persuasiveness of a December 7, 2022 letter authored by Dr. Stromberg and by failing to incorporate into the RFC the limitation that Dr. Stromberg opined therein. ECF 15 at 12–15. Dr. Stromberg's December 7, 2022 letter listed Plaintiff's "confirmed diagnos[es]" of "Fibromyalgia, PTSD, Insomnia and chronic Migraine Headaches"[11] and opined that "due to [these] medical conditions," Plaintiff "is unable to reliably work." AR at 1041.

Unlike with the emotional support animal letter, the ALJ did discuss Dr. Stromberg's December 7, 2022 letter in her decision and articulated how persuasive she found it. *See* AR at 20. Specifically, she concluded that the letter was "unpersuasive" because it was "unsupported [by] . . . objective clinical findings" and "inconsistent with [Dr. Stromberg's] own treatment notes, which

---

[11] Dr. Stromberg's letter also referred to an "attached visit note for additional diagnoses." AR at 1041. But neither the administrative record nor the briefing makes clear which visit note was attached or to which "additional diagnoses" he referred. In any event, Plaintiff does not argue that an attached "visit note" is of consequence to her position, nor is it apparent to the Court how it would be.

reflect [Plaintiff] was the primary caregiver for her grandchildren in 2022." AR at 20 (citing AR at 1050). The ALJ made two other observations to support her finding that the letter was unpersuasive: (1) that Dr. Stromberg "provided a work excuse in November 2022 and released [Plaintiff] with 'no restrictions'" [AR at 20 (citing AR at 1050)]; and (2) that Dr. Stromberg "routinely observed that [Plaintiff] was calm and cooperative with no acute distress and identified only some left trochanteric bursa or lumbar paraspinal tenderness." [AR at 20 (citing AR at 944, 953)]. In Plaintiff's view, the ALJ failed to adequately articulate her persuasiveness analysis in accordance with the applicable regulation. *See* ECF 15 at 12–15.

The applicable regulation requires an ALJ to "articulate in [her] determination or decision how persuasive [she] find[s] all of the medical opinions" of record. 20 C.F.R. § 404.1520c(b). At minimum, the ALJ must "explain how [she] considered the supportability and consistency factors for a medical source's opinions." *Id*. § 404.1520c(b)(2). The factor of supportability "examines how closely connected a medical opinion is to the evidence and the medical source's explanations: 'The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)[,] . . . the more persuasive the medical opinions . . . will be.'" *Zhu v. Comm'r, SSA*, No. 20-3180, 2021 WL 2794533, at *5–6 (10th Cir. July 6, 2021) (quoting 20 C.F.R. §§ 404.1520c(c)(1); 416.920c(c)(1)). Consistency, by contrast, "compares a medical opinion to the evidence: 'The more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be.'" *Id.* (quoting 20 C.F.R. §§ 404.1520c(c)(2); 416.920c(c)(2)). But notably, the medical opinion assessment requirements apply only to evidence that meets the criteria for a medical opinion. *See* 20 C.F.R. § 404.1520c(a).

Plaintiff contends that both the ALJ's supportability and consistency assessments were

flawed. ECF 15 at 12–15. As to supportability, she insists that "there is objective evidence of [her] fibromyalgia in Dr. Stromberg's notes." *Id*. at 12–13 (citing AR at 420, 944, 1069). Plaintiff further contends that her care for her grandchildren does not demonstrate a lack of supportability and, further, that the ALJ misunderstood the work excuse to which she referred, which was authored by Dr. Clair Sava on behalf of Plaintiff's daughters rather than by Dr. Stromberg on Plaintiff's behalf. *See id*. at 14 (citing AR 1051). Next, Plaintiff suggests that the lack of "acute distress" that Dr. Stromberg noted in his treatment records was not indicative of the absence of a chronic illness, such as fibromyalgia. *Id*. at 14–15 (citing *Romero v. Kijakazi*, No. 1:22-cv-00351-JB-JMR, 2023 WL 5741723 (D.N.M. Sept. 6, 2023)). Finally, Plaintiff identifies the ALJ's "biggest error" as her "failure to assess the consistency between Dr. Stromberg's opinions and the record as a whole." *Id*. at 15 (citing AR at 20).

The Commissioner contends that the ALJ "provided several valid reasons for discounting [Dr. Stromberg's December 7, 2022 letter] under the agency's revised medical regulations," but she insists that a persuasiveness assessment was altogether unnecessary, because the letter did not offer an opinion as to any work-related limitations and, instead, merely commented on an issue reserved to the Commissioner. ECF 17 at 21 (citations omitted). As the Commissioner puts it, "in an effort to be thorough, [the ALJ] opted to discuss Dr. Stromberg's letter[, though] she was not required to do so." *Id*. The Commissioner urges the Court to affirm on the basis that the ALJ had no obligation to assess the persuasiveness of Dr. Stromberg's letter. *Id*. Alternatively, the Commissioner contends that the December 7, 2022 letter is "not relevant to Plaintiff's work-related limitations during the relevant time period," as it was authored "almost a full year after the December 2021 date last insured." *Id*. at 22 (citing AR at 1041, 1049). Because the letter "does not help Plaintiff meet her burden of establishing disability on or before her date last insured," the

Commissioner suggests the letter was inconsequential to the ALJ's disability determination. *Id*. (citing 42 U.S.C. §§ 416(i)(3), 423(c)(1); *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010)).

Having examined the ALJ's persuasiveness analysis, the Court is satisfied that she adequately articulated the extent to which she found Dr. Stromberg's December 7, 2022 letter supported by his own explanations and his own objective medical evidence. That is, the ALJ determined that Dr. Stromberg's opinion was *unsupported* by sufficient explanation or by any objective clinical findings apart from his conclusory recitation of Plaintiff's diagnoses. *See* AR at 20. Moreover, the ALJ observed that Dr. Stromberg's opinion was at odds with a reference in his own treatment notes to Plaintiff serving as the primary caregiver for her grandchildren, to Plaintiff being "calm and cooperative," and to his identification of no more than tenderness in Plaintiff's hip and spine. AR at 20. As such, the Court is satisfied that the ALJ properly articulated her supportability analysis and that her findings are supported by substantial evidence.

The ALJ's consistency articulation is a different matter. Although the ALJ indicated that Dr. Stromberg's opinion was *inconsistent* with his own treatment notes" [AR at 20 (emphasis added)], she was functionally describing the opinion's *supportability* (*i.e.*, Dr. Stromberg's explanatory or objective evidentiary support for his own opinion) rather than its *consistency* (*i.e.*, the extent to which the opinion was consistent with other evidence from other sources). Absent some explanation from the ALJ as to how Dr. Stromberg's opinion was either consistent or inconsistent with other evidence of record from other sources, it is not clear that her persuasiveness analysis is supported by substantial evidence. Although the Commissioner asserts that the ALJ "evaluate[d] the consistency of Dr. Stromberg's letter with the rest of the evidence," she fails to point to any discussion by the ALJ on this topic. *See* ECF 17 at 23–24.

Due to its misgivings as to the adequacy of the ALJ's consistency analysis, the Court must

address the Commissioner's position that no such analysis was necessary in the first place. In that regard, the Commissioner insists that Dr. Stromberg's opinion "did not opine to any work-related limitations and instead merely commented on Plaintiff's ability to work, . . . an issue reserved to the Commissioner." ECF 17 at 21. For her part, Plaintiff insists that this argument constitutes "*post-hoc* rationale[,]" which the Court may not adopt to support the ALJ's decision. ECF 20 at 5 (citing *Howard v. Berryhill*, No. CIV-16-1117-STE, 2017 WL 5633281, at *2 (W.D. Okla. Nov. 22, 2017); *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005)).

It is true that the ALJ herself did not conclude that Dr. Stromberg's December 7, 2022 letter contained an opinion on an issue reserved to the Commissioner. *See* AR at 20. Nevertheless, although the distinction is perhaps subtle, the Court construes the Commissioner's argument not as an attempt to supply an improper *post-hoc* rationalization for the ALJ's persuasiveness finding but as one grounded in the doctrine of harmlessness. *See* ECF 17 at 21 (arguing that "even though the ALJ, in an effort to be thorough, opted to discuss Dr. Stromberg's letter, she was not required to do so, and the Court should affirm"); *see also Vachon v. Comm'r, SSA*, No. 6:20-CV-1521-MRM, 2022 WL 458604, at *10 (M.D. Fla. Feb. 15, 2022) (rejecting the plaintiff's characterization of a similar argument as a *post-hoc* rationalization in favor of a harmless error construction); *Angela B. v. Comm'r, SSA*, No. 6:17-CV-01609-SU, 2019 WL 6135036, at *6 (D. Or. Nov. 19, 2019) (concluding that a similar argument made by the Commissioner was not a "*post hoc* explanation" but a correct statement of the law, and concluding that any error in the ALJ's assessment of an opinion was "inconsequential" to the to the "ultimate nondisability determination"); *Frazer v. Kijakazi*, No. CV 20-1147 GBW, 2022 WL 682661, at *7–8 (D.N.M. Mar. 8, 2022) (explaining, in the context of its harmless error analysis, that it was unnecessary for the ALJ to analyze the treating physician's statement on an issue reserved to the Commissioner).

An ALJ's error is harmless when, based on the material the ALJ considered, the Court can "confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733–34 (10th Cir. 2005) (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004)). Because the applicable regulation unequivocally provides that statements on issues reserved to the Commissioner, including opinions that a claimant can or can't work, are deemed "inherently neither valuable nor persuasive to the issue of whether [a claimant] is disabled," the Court is satisfied that no reasonable administrative factfinder properly applying this regulation would reach a different disability determination on account of Dr. Stromberg's December 7, 2022 letter. *See* 20 C.F.R. §§ 404.1520b(c), (c)(3). That is, the Court agrees with the Commissioner that Dr. Stromberg's statement that Plaintiff's medical conditions render her "unable to reliably work" was indeed a statement on an issue reserved to the Commissioner and one that the ALJ had no duty to assess. *See Frazer*, 2022 WL 682661, at *7–8 (reasoning that the ALJ's assessment of the treating physician's opinions that the plaintiff's chronic conditions "rendered her disabled from being able to work" and that "her ability to function reliably in any job [was] greatly reduced" were statements on issues reserved to the Commissioner); *Jesse T. v. Kijakazi*, No. 2:22-CV-101, 2022 WL 19561148, at *10 (E.D. Va. Nov. 21, 2022), *report and recommendation adopted*, No. 2:22CV101, 2023 WL 2537283 (E.D. Va. Mar. 16, 2023) (concluding that opinions regarding the plaintiff's ability to work and "to maintain himself at work reliably" were "statements of disability" that applicable regulations prohibit an ALJ from considering because they do not describe how the plaintiff's limitations would impact his ability to function at work) (citing 20 C.F.R. §§ 404.1520b(c)(3)(i), 404.1520b(c)(3)(v)).

The Court is unconvinced by Plaintiff's attempt to couch Dr. Stromberg's statement as an

opined limitation on her "reliability." *See* ECF 20 at 5–6. She suggests that Dr. Stromberg's alleged "reliability" limitation bears on a mental ability needed for any job: the "ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances." *Id.* at 5 (quoting POMS DI 25020.010(b)(2)(a)). But it is Plaintiff who supplies this explanation for Dr. Stromberg's statement, not Dr. Stromberg himself. For his part, Dr. Stromberg makes no effort to explain how any purported "reliability" limitation impacts Plaintiff's ability to function at work. For instance, he does not specify whether Plaintiff would be unreliable in her work attendance, punctuality, or in some other aspect of her work performance. Dr. Stromberg's opinion is, at bottom, a conclusory statement that Plaintiff cannot work. By limiting his opinion to a statement on an issue reserved to the Commissioner, Dr. Stromberg's opinion fails to describe any vocationally relevant limitations and, as a result, his opinion is unhelpful in the ALJ's RFC assessment. For all of these reasons, any error by the ALJ in assessing the persuasiveness of Dr. Stromberg's opinion was harmless. The Court therefore recommends that Plaintiff's Motion be denied on this final ground.

## VI.  CONCLUSION

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision be **AFFIRMED**, Plaintiff's Motion to Reverse and Remand to Agency [ECF 15] be **DENIED**, and this case be **DISMISSED WITH PREJUDICE**.

_____
THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE

26

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1)(c). Any request for an extension must be filed in writing no later than seven days from the date of this filing. **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed**.