IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

LETICIA B.,

    Plaintiff,

v.                                                                                            Civ. No. 24-116 MV/GJF

LELAND DUDEK, Acting Commissioner
of the Social Security Administration,[1]

    Defendant.

## ORDER OVERRULING OBJECTIONS AND ADOPTING THE MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**THIS MATTER** comes before the Court on: (i) Magistrate Judge Gregory J. Fouratt's Proposed Findings and Recommended Disposition, filed January 24, 2025 (Doc. 22) ("PFRD"); (ii) Plaintiff's Objections to PFRD on Plaintiff's Motion to Remand, filed February 7, 2025 ("Objections"); and (iii) Defendant's Response to Plaintiff's Objections to the Magistrate Judge's PFRD on Plaintiff's Motion to Remand, filed February 20, 2025 (Doc. 24) ("Response"). For the following reasons and after having conducted a *de novo* review of the relevant portions of the record, the Court **OVERRULES** Plaintiff's Objections and **ADOPTS** the PFRD.

## I.    BACKGROUND

Plaintiff is a 45-year-old, high-school-educated woman, who previously worked as an administrative clerk, sales attendant, cashier, and teller/banker. Administrative Record ("AR") at 21, 221–22, 234. On February 18, 2021, Plaintiff filed an initial application for disability insurance benefits in which she alleged that she became disabled on August 17, 2017, due to "[s]evere PTSD, major depression, fibromyalgia, sleep apnea, anxiety, insomnia, nightmares, REM sleep disorder,

---

[1] Leland Dudek became Acting Commissioner of the Social Security Administration on February 19, 2025; thus, pursuant to Federal Rule of Civil Procedure 25(d), he is "automatically substituted as a party."

migraines, [and] asthma." AR at 87–96. Plaintiff's application was denied both at the initial level and upon reconsideration. AR 87–116. On January 26, 2023, ALJ Jennifer Fellabaum ("the ALJ") conducted a hearing at Plaintiff's request. AR at 58–86, 139–41. Plaintiff was represented by counsel and testified at the hearing, as did vocational expert Mary Elvir. AR at 56–86.

On February 7, 2023, the ALJ issued her decision, finding that Plaintiff was not disabled under the relevant sections of the Social Security Act. AR at 11–23. Plaintiff requested that the Appeals Council review the ALJ's decision (AR at 46–53), but the Council denied her request for review [AR at 1–7], making the ALJ's decision the final decision of the Commissioner. *See Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). Plaintiff timely filed the Complaint in this case seeking review of the Commissioner's decision. Doc. 1.

## II.   STANDARD OF REVIEW

To preserve an issue for review, "a party's objections to the magistrate judge's report and recommendation must be both timely and specific." *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996). In reviewing such objections, the district court must "make a de novo determination of those portions of the [report and recommendation] . . . to which objection is made." 28 U.S.C. § 636(C); *see also* Fed. R. Civ. P. 72(b)(3). The district court is not, however, required to "make any specific findings; the district court must merely conduct a *de novo* review of the record." *Garcia v. City of Albuquerque*, 232 F.3d 760, 766–67 (10th Cir. 2000) (holding that a district court's "terse" order, containing only one sentence for each claim, was still "insufficient to demonstrate that the court failed to review the magistrate's recommendation *de novo*"). Consequently, the district court is free to "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(C); *see also United States v. Raddatz*, 447 U.S. 667, 676 (1980) (noting that "in the exercise of [its] sound judicial discretion,"

2

the district court may place "whatever reliance" it chooses to place on a magistrate judge's recommendation).

## III. DE NOVO REVIEW

In his PFRD, Magistrate Judge Fouratt addressed Plaintiff's claims that remand was required for two primary reasons: (1) because the ALJ "committed harmful legal error" by misapplying Social Security Ruling ("SSR") 12-2p when she determined that Plaintiff's "well-documented fibromyalgia" was not medically determinable (Doc. 22 at 7–17); and (2) because the ALJ committed "reversible legal error" by failing to properly assess the opinions of Plaintiff's long-time treating physician, Dr. David Stromberg (Doc. 22 at 17–26). This Court now makes a *de novo* determination of those portions of the PFRD to which Plaintiff objects.

### A. The ALJ did not commit reversible error at step two when assessing Plaintiff's alleged fibromyalgia.

With respect to the first alleged error, Judge Fouratt found that the ALJ did *not* commit reversible error at step two of the sequential evaluation process when she determined that Plaintiff's alleged fibromyalgia was not a medically-determinable impairment. Doc. 22 at 7–17. In so concluding, he observed that the ALJ identified two unsatisfied requirements under SSR 12-2p: (1) the presence of at least eleven positive tender points in locations identified in that SSR; and (2) evidence that other disorders that could cause the symptoms or signs were excluded. *Id.* at 9. Judge Fouratt observed that Plaintiff conceded in her reply brief that "the evidence as it stood at the time of the [ALJ's] decision did not clearly establish [Plaintiff] met all the criteria of SSR 12-2p," and he noted that she "shift[ed] the focus" to whether the ALJ properly developed the record. *Id.* at 12–13 (citing Doc. 20 at 2).

In her Objections, Plaintiff "concedes the record did not show the criteria of SSR 12-2p," but she maintains that the ALJ should have further developed the record. Doc. 23 at 4. In the

3

PFRD, Judge Fouratt concluded that the ALJ reasonably exercised her discretion to determine that she had sufficient information for a disability determination without further developing the record. *Id.* at 15. He emphasized that the ALJ "consider[ed] and thoroughly discuss[ed] evidence related to Plaintiff's various symptoms, many of which she attributed to fibromyalgia" and, further, that the ALJ considered resulting functional limitations caused by those symptoms. *Id.* at 16. In Judge Fouratt's view, there was "no indication that further developing the record with respect to the SSR 12-2p criteria—either by recontacting [her treating physician] or by ordering a consultative examination—would have altered the ALJ's decision that Plaintiff was not disabled before her date last insured." *Id.* at 17 (citing *Jazvin v. Colvin*, 659 F. App'x 487, 489 (10th Cir. 2016)).

In general, an ALJ has "broad latitude" in deciding whether to further develop the record. *See Hawkins v. Chater*, 113 F.3d 1162, 1166 (10th Cir. 1997). While ordering a consultative examination is not necessary "when the ALJ has enough information to make a disability determination," one "may be required if there is a direct conflict in the medical evidence, the medical evidence is inconclusive, or additional tests are required to explain a diagnosis." *Jazvin*, 659 F. App'x at 1166 (internal quotation marks omitted). In cases where a claimant is represented by counsel, like here, "the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case . . . [and] to identify the issue or issues requiring further development." *Hawkins*, 113 F.3d at 1167. Thus, in the absence of a request by counsel, an ALJ is not required to "order a consultative examination unless the need for one is clearly established in the record." *Id.* at 1168.

In support of her position that the ALJ failed to adequately develop the record as to fibromyalgia, Plaintiff relies principally upon a decision from Magistrate Judge Fashing: *Gonzalez v. Berryhill*, No. 1:17-cv-01096-LF, 2019 WL 1331787 (D.N.M. Mar. 25, 2019). Plaintiff insists

4

that Judge Fouratt failed to appreciate the ways in which *Gonzalez* mirrors the instant case. Doc. 23 at 5–6. And as to Judge Fouratt's conclusion that the record in this case "provides slightly more detail regarding Plaintiff's fibromyalgia diagnosis than did the record in *Gonzalez*" (Doc. 22 at 14), Plaintiff implies that Judge Fouratt improperly accessed the administrative record in the *Gonzalez* case, and she requests production of that record. Doc. 23 at 6 (arguing that "it is impossible for the Magistrate here or Ms. B to know whether the record here 'provides slightly more detail[,]' and suggesting that "[i]f the Magistrate Judge has access to Ms. Gonzalez's Administrative Record, Ms. B respectively requests the production of that document").

First, it bears noting that, even if *Gonzalez* was on all fours with the instant case, it does not control the decision here, as it constitutes only non-binding intra-district authority.[2] Moreover, the Court does not find persuasive Plaintiff's critiques of Judge Fouratt's treatment of *Gonzalez*. That is, the Court does not read the PFRD to suggest that Judge Fouratt improperly accessed the administrative record in *Gonzalez* when considering Plaintiff's claims in this case. Rather, Judge Fouratt took account of Judge Fashing's conclusion in *Gonzalez* that "overwhelming evidence that [the plaintiff] suffer[ed] from many of the signs and symptoms of fibromyalgia, and that she was diagnosed with fibromyalgia *at some point*" would have made it "reasonable for the ALJ to inquire *whether* [the plaintiff] had been diagnosed with fibromyalgia, *when* that diagnosis was made and *by whom*." *Gonzalez*, 2019 WL 1331787, at *5 (emphasis added); *see also* Doc. 22 at 13. By contrast, Judge Fouratt explained that the ALJ in this case observed that it was Plaintiff's treating physician, Dr. Stromberg, who noted that fibromyalgia was "a 'likely' diagnosis . . . that he would 'revisit' . . . because the diagnosis was made a long time ago by another physician" but that by 2022, Dr. Stromberg "was not even diagnosing [fibromyalgia] during visits." Doc. 22 at 11

---

[2] Likewise, the persuasive authority cited within Judge Fouratt's PFRD (Doc. 22 at 13–14), which Plaintiff attempts to distinguish in her Objections (Doc. 23 at 6–8), also does not control.

(quoting AR at 14). Judge Fouratt went on to acknowledge that, on December 7, 2022, *well after Plaintiff's date last insured*, "Dr. Stromberg 'revisited fibromyalgia' and determined that Plaintiff met the 'AAPT criteria' with nine sites of pain and other symptoms." Doc. 22 at 11–12 (citing AR at 1069). Under these circumstances, it was not improper, and was in fact reasonable, for Judge Fouratt to observe that there was "slightly more detail" provided in the record here—as compared to that in *Gonzalez*—concerning when and by whom a diagnosis of fibromyalgia was considered.

More importantly, it is not a physician's fibromyalgia diagnosis but the *resulting functional limitations* that determine disability. *See* SSR 12-2p, 2012 WL 3104869, at *4 (July 25, 2012); *Coleman v. Chater*, 58 F.3d 577, 579 (10th Cir. 1996). Indeed, according to SSR 12-2p, the agency "will not purchase a [consultative examination] solely to determine if a person has [fibromyalgia] in addition to another [medically-determinable impairment] that could account for his or her symptoms." 2012 WL 3104869, at *4. Here, although the ALJ did not find fibromyalgia to be a medically-determinable impairment, she identified other medically-determinable impairments—some severe, others non-severe—including left hip trochanteric bursitis, degenerative disc disease, plantar fasciitis, depression, anxiety, PTSD, headaches, and sleep apnea. AR at 13–14. And notably, the ALJ explained that she "considered all of [Plaintiff's] severe and non-severe impairments, as well as her subjective statement of symptoms" when assessing Plaintiff's residual functional capacity ("RFC") at step four of the sequential evaluation process. AR at 14 (citing SSR 16-3p).

As Judge Fouratt observed with respect to the ALJ's step-four analysis:

after determining that Plaintiff's alleged fibromyalgia did not satisfy the SSR 12-2p criteria for a medically determinable impairment, the ALJ went on to consider and thoroughly discuss evidence related to Plaintiff's various symptoms, many of which [Plaintiff] attributed to fibromyalgia. *Compare* AR at 68 (testifying that the disabling symptoms from her fibromyalgia included constant achy pain and tingling, most notably in her hips and back, as well as flares approximately once

6

> per month with sharp, excruciating pain), *with* AR 18–20 (discussing Plaintiff's complaints of achy and sharp pain and tingling as well as physical examination findings of tenderness in her hip and spine). To be sure, the ALJ considered functional limitations caused by Plaintiff's hip and spine pain. *See* AR at 13-14 (characterizing Plaintiff's left hip trochanteric bursitis and degenerative disc disease as "severe impairments"); 19–21 (restricting Plaintiff to "light exertion" rather than the "medium exertion" limitation opined by the state agency consultants in part because she found those opinions "inconsistent with the treatment notes documenting fatigue, . . . tenderness in the spine and hip, and injections for pain"). And of the conditions SSR 12-2p describes as "co-occurring," the ALJ analyzed Plaintiff's anxiety and depression as "severe impairments." *Compare* SSR 12-2p, 2012 WL 3104869, at *3 (II.B(2)), *with* AR at 13.

Doc. 22 at 16 (internal footnote omitted). In addition, the ALJ concluded at step four:

> In short, clinical examinations routinely reflect largely normal motor, neurological, and psychiatric findings, except for tenderness in the hip and spine and depressed/dysphoric moods, as cited above. In addition, the claimant has remained conservatively treated for pain and psychological symptoms with counseling and infrequent steroid injections in the hip, as cited above. Moreover, she reported significant improvement with injections. More specifically, by August 2021, the claimant reported her injections in 2019 provided nearly two years of relief and that the last injection in 2021 provided five months of relief. Finally, the claimant was discharged from counseling in 2020 after achieving treatment goals, as cited above.

AR at 20 (internal citations omitted).

The ALJ's step-four analysis includes discussion of symptoms Plaintiff attributed to fibromyalgia, objective medical findings and observations related to those symptoms, treatment for those symptoms, and other medically-determinable impairments "that could account for" alleged fibromyalgia symptoms, *see* SSR 12-2p at *4. The ALJ considered medical records from before and after the relevant period, the prior administrative findings of state agency experts as to Plaintiff's work-related limitations, Plaintiff's testimony about her symptoms and how they impacted her ability to work, reports about Plaintiff's activities of daily living, Plaintiff's function report, and her mother's third-party function report. *See* AR at 17–21; *see also Cowan v. Astrue*, 552 F.3d 1182, 1187–88 (10th Cir. 2008) (finding there was "no need to further develop the record because sufficient information existed for the ALJ to make her disability determination[,]"

7

including evidence of plaintiff's daily activities and physical abilities, a psychiatric review technique form finding mild restrictions, and no evidence suggesting a greater effect on plaintiff's ability to work). Although Plaintiff suggests that "[r]econtacting her long-time physician who found she met another criterion for fibromyalgia would have been simple and could have led to answers" (Doc. 23 at 12), the ALJ *did* consider Dr. Stromberg's treatment notes and the opinion he provided that Plaintiff was "unable to reliably work," *see infra* Part III.B, and it is unclear what more Dr. Stromberg could have provided that would have assisted the ALJ in determining whether Plaintiff was disabled during the relevant period.

Indeed, given the ALJ's robust discussion at step four, the Court cannot say that further developing the record with respect to fibromyalgia-related symptoms would have altered the determination that Plaintiff was not disabled before her date last insured. And for her part, Plaintiff has not pointed to objective evidence in the record to suggest that a finding that she had the medically-determinable impairment of fibromyalgia—in addition to the impairments of left hip trochanteric bursitis, degenerative disc disease, depression, anxiety, headaches, and sleep apnea—would have a material impact on the ALJ's disability decision. *See Saiz v. Kijakazi*, No. 21-0681 KRS, 2022 WL 4235325, at *17 (D.N.M. Sept. 14, 2022) (rejecting plaintiff's argument that the ALJ should have further developed the record after finding her fibromyalgia was not a medically-determinable impairment, and affirming the ALJ's decision "that she had enough information to make a disability determination without a consultative examination, [where the plaintiff had] not pointed to objective evidence in the record that would suggest a medically-determinable impairment of fibromyalgia *in addition to ankylosing spondylosis* would have a material impact on the disability decision").

The Court is satisfied that sufficient evidence existed in the record for the ALJ to make a

disability determination and that it was an appropriate exercise of the ALJ's discretion not to further develop the record with respect to fibromyalgia. *See Cowan*, 552 F.3d at 1187; 20 C.F.R. § 1520b(b)(2). This is particularly so where neither Plaintiff nor her counsel asked the agency to further develop the record with respect to fibromyalgia *and* where the relevant period ended more than a year before the ALJ issued her decision. Accordingly, the Court overrules Plaintiff's objections and denies her Motion on this ground.

### B. The ALJ did not commit harmful error at step four when assessing Dr. Stromberg's opinion(s).

Plaintiff also maintains that the ALJ erred by failing to properly assess the opinions of Dr. Stromberg, and she objects to Judge Fouratt's conclusions to the contrary. Doc. 23 at 13–26. First, Plaintiff argues that the ALJ committed harmful legal error when she failed to discuss Dr. Stromberg's January 17, 2019 letter concerning the certification of her dogs to provide emotional support. *Id.* at 15–19. In that letter, Dr. Stromberg remarked: "Given some of her comorbidities, [Plaintiff] would highly benefit from having her dogs certified to provide her with ongoing emotional support." AR at 334.

In his PFRD, Judge Fouratt determined that the January 17, 2019 letter did not qualify as a medical opinion because Dr. Stromberg "did *not* opine that Plaintiff required an emotional support animal *in order to perform any work-related functions*, nor did he discuss *what Plaintiff could do in a work* setting despite her symptoms and diagnoses." Doc. 22 at 19 (citing *Angela H. v. Comm'r, SSA*, No. 2:22-cv-4461, 2024 WL 1259875, at *4 (S.D. Ohio Jan. 30, 2024); 20 C.F.R. § 404.1513(a)(2)) (emphasis added). This Court agrees. Even if Dr. Stromberg believed that Plaintiff "would highly benefit" from having emotional support dogs, Dr. Stromberg's "recommendation," as Plaintiff characterizes it (*see* Doc. 23 at 17), does not constitute a medical opinion as defined by the applicable regulation. *See* 20 C.F.R. § 404.1513(a)(2) (providing that

9

"[a] medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in [specified] abilities"). As a result, the ALJ had no duty to assess and articulate the persuasiveness of Dr. Stromberg's recommendation.

Nor does Dr. Stromberg's January 17, 2019 letter constitute significantly probative evidence that the ALJ was required to discuss. Indeed, it fails on its face to address Plaintiff's limitations or what effect those limitations may have on her ability to work. *See Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007). Dr. Stromberg indicated that Plaintiff "would highly benefit" from the certification of emotional support dogs without providing any context as to the setting in which he expected her to have those benefits. AR at 334. Plaintiff contends that, because she was not working at the time Dr. Stromberg authored the letter, "[a]ssumedly, when [Dr. Stromberg] found that she would 'highly' benefit from having her dogs certified to provide 'ongoing emotional support,' he meant *everywhere* as the dogs would not be only certified in Ms. B.'s home if she returned to work." Doc. 23 at 15 (citing AR at 334) (emphasis added). But Plaintiff's assumption is not supported by the language of Dr. Stromberg's letter. And as Judge Fouratt observed, "Dr. Stromberg's letter does not offer any insight into the impact that an emotional support animal might have on Plaintiff's ability to work." Doc. 22 at 20. Because it fails to do so, the Court agrees that the ALJ did not commit reversible error when she omitted discussion of the January 17, 2019 letter. As such, the Court overrules Plaintiff's objections and denies her Motion on this ground.

In her final ground for relief, Plaintiff argues that the ALJ committed reversible error by inadequately articulating the persuasiveness of Dr. Stromberg's December 7, 2022 letter and by failing to incorporate into the RFC the limitation he opined therein. Doc. 23 at 19–26. In his

December 7, 2022 letter, Dr. Stromberg opined that due to the medical conditions of "Fibromyalgia, PTSD, Insomnia, and chronic Migraine Headaches[,]" Plaintiff was "unable to reliably work." AR at 1041. The ALJ discussed this opinion, concluding that it was unpersuasive because it was neither supported by objective clinical findings nor consistent with Dr. Stromberg's own treatment notes. AR at 20. Plaintiff insists, however, that the ALJ's supportability and consistency analyses were flawed. Doc. 23 at 19–24. With respect to her consistency analysis, Judge Fouratt agreed. Doc. 22 at 23.

The Commissioner takes the position that the ALJ's persuasiveness assessment was *unnecessary*, because the December 7, 2022 letter merely commented on an issue reserved to the Commissioner. Doc. 17 at 21 (emphasis added). As the Commissioner put it, "in an effort to be thorough, [the ALJ] opted to discuss Dr. Stromberg's letter[, though] she *was not required* to do so." *Id.* (emphasis added). The Commissioner urges the Court to affirm the ALJ's disability determination on the basis that the ALJ had no obligation to assess the persuasiveness of Dr. Stromberg's letter. *Id.*

Acknowledging that the ALJ herself did not conclude that the December 7, 2022 letter contained an opinion on an issue reserved to the Commissioner, Judge Fouratt "construe[d] the Commissioner's argument not as an attempt to supply an improper *post-hoc* rationalization for the ALJ's persuasiveness finding but as one grounded in the doctrine of harmlessness." Doc. 22 at 24 (citing Doc. 17 at 21; *Vachon v. Comm'r, SSA*, No. 6:17-CV-01609-SU, 2019 WL 6135036, at *6 (D. Or. Nov. 19, 2019); *Frazer v. Kijakazi*, No. CV 20-1147 GBW, 2022 WL 682661, at *7–8 (D.N.M. Mar. 8, 2022)). Ultimately, Judge Fouratt agreed that any error in the ALJ's persuasiveness analysis of Dr. Stromberg's December 7, 2022 letter was in fact harmless. *Id.* at 25. Plaintiff urges this Court to conclude otherwise, but she acknowledges:

11

> it . . . may be appropriate to supply a missing dispositive finding under the rubric of harmless error in the right exceptional circumstance, i.e., where, based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way.

Doc. 23 at 25 (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004)).

Because 20 C.F.R. § 404.1520b is clear that statements on issues reserved to the Commissioner, such as opinions about whether a claimant is "able to work[] or able to perform regular or continuing work," are "inherently neither valuable nor persuasive to the issue of whether [a claimant] is disabled," this Court is satisfied that no reasonable administrative factfinder properly applying this regulation would reach a different disability determination *based upon Dr. Stromberg's opinion* that Plaintiff was unable to reliably work.

Like Judge Fouratt, this Court is not persuaded by Plaintiff's suggestion that Dr. Stromberg was effectively opining that Plaintiff had a "reliability limitation." *See* Doc. 23 at 26 ("The question then is whether 'reliably' is a work-related limitation.") After all, Dr. Stromberg did not specify that Plaintiff would be "unreliable" in any specific aspect of her work performance, such as attendance or punctuality. In fact, he did not opine any vocationally-relevant limitations whatever.

Ultimately, this Court agrees with Judge Fouratt's assessment that "Dr. Stromberg's opinion is, at bottom, a conclusory statement that Plaintiff cannot work." Doc. 22 at 26. Any error by the ALJ in assessing the persuasiveness of Dr. Stromberg's December 7, 2022 letter was thus harmless, and the Court therefore overrules Plaintiff's objections and denies her Motion on this ground.

**IT IS THEREFORE ORDERED AS FOLLOWS:**

(1) Plaintiff's Objections (Doc. 23) are OVERRULED;

(2) The Magistrate Judge's PFRD (Doc. 22) is ADOPTED;

(3) The Commissioner's decision is AFFIRMED;

(4) Plaintiff's Motion to Reverse and Remand to Agency (Doc. 15) is DENIED;

(5) This case is DISMISSED WITH PREJUDICE.

HONORABLE MARTHA VÁZQUEZ
SENIOR UNITED STATES DISTRICT JUDGE